Good morning. If it pleases the Court, my name is Michael Bigelow and I represent John Gann, petitioner in this matter. When the trial court advised Mr. Gann that he would receive no special privileges, he would be bound by the rules of law, the rules of court, that he was facing an experienced prosecutor, Mr. Gann said he understood all of those things. But he agreed tacitly that he also understood that the prosecution would be bound by the same rules that he was to be bound by. And he understood tacitly that the trial judge would act as the arbitrator, the umpire, the referee. That didn't happen in this case. California Penal Code section 1054.1. 1054 rules discovery in California. 1054.1 imposes upon the prosecution the obligation to deliver discovery. 1054.7 says that discovery shall be provided by the prosecution within 30 days prior to trial. That didn't happen. Trial began, he was arraigned in November. Mr. Gann was arraigned in November. Trial began, was to begin January 4th, to be assigned out of Department 4, which is sort of like a dispatch calendar. All cases get assigned into Department 4 and then assigned out. It got assigned out of Department 4 to Judge Cecil on January 4th. As of January 4th, the prosecution had not delivered to Mr. Gann really bad stuff, fingerprint evidence. The knife in a wrapped up with Mr. Gann's name on it, and they developed fingerprints. I thought, I just want to get the facts straight. On December 22nd, they informed him of it, but they didn't give it to him? Is that what happened? That's correct. December 22nd. I'm asking. I'm sorry, ma'am. I apologize. They informed his investigator. They didn't inform him. They informed his investigator. They had other evidence. And they said what it was, but they didn't deliver it? But they didn't deliver it. And in the record, actually, they didn't deliver it until January 4th. The prosecutor didn't even have it January 4th, at least as I read the record. I could read it wrong. I don't think I do. But in my excerpts, there is a rather lengthy discussion of it at about page 83 of the excerpts of records somewhere in that general area, 36 of the transcript. In any event, so the prosecutor says, hey, I got this stuff from DOJ, tells the investigator what the stuff is. The investigator goes to Mr. Gann on Christmas Eve. Christmas Eve, 1994, was a Sunday. So he theoretically has got a week to play with this stuff that he doesn't even have. He doesn't know what to do with it. He doesn't have anything to do with it. He doesn't know what it says. He just knows that there are some reports out there that talk about fingerprint evidence. January 4th, they come into court. But where is this all meeting? He apparently, even before this, on December 21st, had asked the prosecutor if it would be okay to have a continuance. And the prosecutor said yes, but he never filed the paperwork. And on December 22nd, presumably, he knew he needed a continuance, but he still didn't file the paperwork. So this is all ultimately getting to the question of whether he should have gotten a continuance. And although he didn't get the actual stuff until January 4th, he knew enough about it to know that he needed a continuance, but he never asked for it. Right? Is that accurate? May I respectfully disagree? I hate to disagree. Oh, you definitely may. Well, if you want to win, you better disagree. I'm simply trying to recite my understanding of the facts, and therefore, that's why I'm asking. The Court refers to paperwork. The Court's referring to the requirement under Penal Code Section 1050 to require that requires the filing of a notice of motion to motion for a continuance. Or some request to the court in some fashion. Right. Continuances in Sacramento County Superior Court are done, I'm going to say on a wink and a nod, but they're done with understandings. Hey, man, I'm not ready to go to trial on this thing. Let's continue it. The prosecutor says, yeah, I want to take a day off, no big deal. They show up in Department 4 where Judge Cecil sits regularly on assignment. Show up in Department 4 and they say, all right, there's an agreement between counsel, we're going to continue this case. No paperwork is filed. Now, what Mr. Carlson did, the prosecutor said to Mr. Gann is, look, you want a continuance on this thing, no problem. I don't have an objection. There is nothing in the record, and this is where I disagree with the Court, there is nothing in the record that suggests that Carlson predicated the continuance on the filing of a 1050 motion. Now, what's really interesting, and the proof of the pudding, as far as I'm concerned, is this. Mr. Gann to the Court says, Judge, Judge Cecil, Judge, what do you mean file paperwork? We never have to file any paperwork. We never have to file motions. I see, and it's in the excerpts, I never, it never happens. Nobody disagrees with that. And when Judge Cecil starts to say, and I didn't work it. Judge Cecil begins to say, here it is, page 86 of the ER. Court, people are ready to proceed. Carlson, the district attorney, says yes. The Court, all right, Mr. Gann, I don't believe that you stated good cause either for the failure to have your motion in writing or to file a timely doesn't. And he doesn't elaborate on it. He doesn't go further because he knows you don't have to file, it is not the requirement of the Court, it is not the practice in Sacramento County to file a formal motion. But that begs the issue, if I may. It begs the issue because it makes it, as a constitutional matter, if the judge was relying on a written rule of court, the fact that it is very hard for us to say that it was unconstitutional for him to do that. It begs the issue that Mr. Gann was requesting counsel at this time for the purposes of delay. But he wasn't, that the continuance was a predicate, was what he was really requesting. And as your brief says, eventually he wanted, what you actually rely on in terms of why he needed the lawyer was to get the continuance. Well, that's what you say in your brief, that the reason for asking for the lawyer was to get the continuance. He needed a lawyer to get a continuance so that he could get his discovery evaluated, so he could get his discovery analyzed, so he could get a good. What I'm saying is the continuance issue was both chronologically and logically prior to the counsel issue in this case. Your Honor, I'm sorry, I didn't hear the last part. It appears to me that the continuance issue was both chronologically and logically prior to the counsel issue in this case. He asked for a continuance. If he'd been able to get the continuance, he felt that he would be able to effectively prepare with this late discovery, discovery that had not been provided him. And there is a discussion in there that even on January 4th, they don't have the discovery. I'm out of time, almost. The court isn't going to give him the continuance. And he says, I can't prepare, I need help doing this preparation. And he asks for a lawyer. Now, I think that it was constitutionally wrong not to give him a lawyer. He can withdraw that request as long as it's not for purposes of delay. And delay is a pejorative term in this context. He's not trying to delay the case because he doesn't want to go to trial. Keep in mind this trial had been set less than 60 or maybe about 60 days earlier. In the larger scheme of things, that's not a long time lapse between the time of arraignment and the time of trial. We talk about delays, we talk about six months or a year or constitutionally under Barker, Wingo. I mean, those are delays. Sixty days is not a delay. So what he wants is to get the evidence that he got late that he didn't have on the day of trial. He wants to get that evidence evaluated. He can't do it. He can't get a continuance to do it, and he can't get a lawyer. He asks for a lawyer to help him do it. He's not asking for a delay because he didn't want to go to trial. He's asking for a delay so that he can effectively represent himself or be represented at trial, all of which are his constitutional rights. And I'm out of time unless the Court has other questions. Thank you. Thank you for your consideration. Good morning. Sean McCoy, Deputy Attorney General for the appellee. This is a case where the appellant has repeatedly attempted to delay proceedings. He has a statute. Can you just write the speech file? There's mention in the transcript somewhere I was looking for it. Yes, that's a statutory right to a speedy trial within a certain amount of time. Yes, it was. Yes, it was. Not that I'm aware of. Not that I'm aware of. The morning of the ---- Well, it's very simple. It's very simple, Your Honor. On December 21st, the prosecutor and the defendant talked about the possibility of a continuance. That's mentioned on page 81 of the excerpts of record. And the prosecutor's recollection of that discussion is that, well, if you have a need for a continuance, perhaps the judge won't mind. The prosecutor states the prosecutor said nothing about whether he would agree or object to the continuance. He's not required to. The idea that continuances are given on a wink and a nod is a mischaracterization. Continuances occur for good cause. A judge has no obligation to grant a continuance merely because ---- He was not informed of the key evidence of the case the day before Christmas. The key evidence of the case was introduced at the preliminary hearing where there was testimony that the knife was found in his cell, a cell that had been searched before he occupied it. And I gather his defense was he didn't put it there. So the key evidence was the evidence that suggested that he did put it there. His defense was that it wasn't mine. I didn't put it there. The evidence that was discovered the day, two days before Christmas, was a DOJ forensic lab. Well, it wasn't discovered two days before Christmas. His investigator was informed of it. His investigator was informed that there exists a report that is coming that says here is your fingerprint, here is your label. This is coming. The prosecutor does have an affirmative duty to discover information as soon as he receives it under 1054. 1054.7 says 30 days before trial. That doesn't always happen. 1054.7 is a directory statute, not a mandatory statute. The remedy for the defendant is to seek a continuance, is to seek some other sanction if possible. However, the court's usually not going to exclude simply because delay in production where there is no intent on the part of the prosecutor to hide them all. And in this case, there's no showing of that. The prosecutor informed the defense investigator the day before Christmas. Hey, this is coming down. I'll get it to you as soon as I have it. He gets it. He gets a faxed, a photocopy the day before trial and promptly discovers it. That's in the excerpts of record as well. The defense. What date was that? That was January 3rd is when the photocopies are provided. That's also in the excerpts of record. I'm not certain who it was provided to. It was provided, I believe, the. In page 85, page 85 of the excerpts of record, the prosecutor states. So then the defendant says, among other things, I want a continuance because I want to get an expert to look at this fingerprint evidence, which is a fairly sensible thing to say. And the judge says no. How was he supposed to deal with the fingerprint evidence that he had just gotten the day before? At best. I want a continuance because I want to file a motion to dismiss for failure to preserve page 84 and 85. That's one of the reasons. But another reason was because he wanted to get a fingerprint expert. Yes. Page 85, I want to suppress the DOJ evidence. Page 86, I want additional time to research the motions I've previously mentioned. Page 88, I issue the subpoena. This is taken for a list of inmates who were housed near me on July 4th when the weapon was found. Page 88, 89, I need an expert witness to check out the fingerprints. Let's ignore all the rest of them. What about the fact that he needs an expert witness because to look at some evidence that he had gotten the day before trial started? Well. I understand that it's a very high standard to have a due process violation for failure to grant a continuance. If he needs an expert witness, if he needs an expert witness, he can get an expert witness. He can go to the judge, file in camera if necessary, say, judge, I need an expert witness. I've got to expedite this. Gets the expert witness, the trial can proceed. The prosecution can put on its case if at that time there's no the expert isn't ready or the information isn't back, he can say, judge, my expert is still out here. Can I have a continuance at this point because I'm not ready to proceed waiting for my expert? What's the expert going to do? What the judge said, as I recall, is that he can interview these other witnesses and then he would consider a continuance for that purpose. If they said something that warranted a continuance. Right. But he didn't say that about the expert. He was not told that he couldn't have an expert witness. No, I understand that. But the judge did not suggest that there would be a continuance available for the expert. He did suggest there might be a continuance available for the inmate witnesses. The judge suggested that a continuance would be available if the defendant was able to articulate some good cause for the continuance and simply the fact that he needs an expert witness when he had two weeks to say, hey, there's information coming down. I might need an expert. I might need additional time to consider it. When he had ten weeks to interview these witnesses, to request for names, rather than go to the district attorney and say. Let's just disregard everything except what was directly related to the fact that this key evidence shows up the day before trial. And the question is, at what level, at what point would it rise to a due process violation if the judge insisted on going to trial when the evidence, such evidence, was not available and couldn't have been reviewed by him until the day before trial? I think for it to rise to a level of a due process violation, it would have to be some kind of evidence that caught him completely unprepared. He had knowledge and notice that the prosecution was going to prove that there was a knife that was his found in his cell. And this evidence collaborates that. It doesn't say all of a sudden you're charged with a gun. I suppose another question is whether there's any constitutional requirement of discovery of this kind anyway, which is non-exculpatory evidence. In other words, if the state doesn't have to provide this discovery, it may not have to provide any continuance to deal with the discovery. I wouldn't want to venture there, Your Honor. I rather like mandatory discovery. It makes the job very simple and keeps us away from the mess of civil cases. Well, I understand that, but the question is, well, what's the constitutional basis? So the fact is the prosecutor has an obligation to provide discovery as soon as he has it. He did so in this case. He informed the defense immediately that here's this discovery. It's coming. I'll get it to you as soon as I can. You say here's this discovery is coming. What did he tell him was coming? I believe he told them that there was a DOJ report regarding the label. I don't know if the prosecutor, he mentioned the fingerprints or not. Maybe he didn't know of it. But he certainly, the evidence in the excerpts of record indicate that he certainly informed the defense investigator that there was additional information coming and gave him some knowledge of the quantity, of the quality and character of that evidence. If there are no further questions, I'll conclude. Thank you. In 13 seconds, Your Honor, I would like to invite the Court's attention to the excerpts of record beginning at about page 82. It is Mr. Carlson's account of affairs. Interestingly, Mr. Carlson on the day of trial did not know what the evidence was. He says, I would like to go and view this evidence myself, speaking of the evidence at DOJ. I would like to go and view the evidence myself so I can report back to Mr. Gant what is exactly there. He didn't even know what was there other than there were fingerprints. Thank you. Well, you knew there were fingerprints? I'm sorry? He knew there were fingerprints? He knew there were fingerprints. Apparently, I would suspect that DOJ calls him up and says, I got a report that says there are fingerprints. Yeah. What about the question of whether when the investigator was told earlier that there was a report from DOJ, did that say there were fingerprints? The record's not clear on that. The record is not at all.  The record is not clear on that. And you've had two weeks. You've had two weeks and chosen to do nothing about it. Now, that's the question. That's what the judge says. Is the judge wrong that he didn't know about this two weeks ago? Yes, the judge was wrong. How do we know the judge is wrong? Because Mr. Carlson did not know what was there. Mr. Carlson tells the Court that's different than he didn't know that there were fingerprints. I'm sorry? He hadn't seen it, but how do we know he didn't know there were fingerprints? Yeah, you're going to love this answer because that's the way it works, unfortunately. And because DOJ is so backlogged, they get stuff on the day of trial and they get it to the prosecutor because there are continuances, and everybody knows there are continuances, and that's what this was all about. And they didn't need to. I think we know that in answer to the Court's question is that Mr. Carlson says, I want, at 83 and 84, he says no. I'm sorry. He says they uncovered, the defendant says at page 81, Petitioner, apparently they uncovered some type of evidence from the Justice Department, Carlson, if I could, concerning fingerprints, if I could explain. And then Carlson goes on to explain. So it seems to me that for the first time, Carlson learns from DOJ about the fingerprints on December 22nd. He informs the investigator on December 22nd. The investigator informs the defendant on the Petitioner on the 24th. And on the 24th, they still don't have the paperwork, meaning the reports, so they don't have anything to work off of. And then Carlson says at page, excerpt of record 82 and 83, he says. Well, Carlson says that they found the fingerprint and they had the paper handle with the address labeled Gann. He was informed of that on the 22nd and informed Mercado. So the record would appear to be that he was informed of that approximately two weeks before, as the judge said. On the 22nd. Yeah. Yes, okay. Two weeks before. Two weeks before. The 22nd to the 4th would be approximately, would be two weeks before. I don't think much of his two weeks. I can't help that. The weekends as they are and the holidays as they were, but still there was nothing, there was nothing for the defendant to do. All he's got is, I mean, and it's something as a defense lawyer, as a trial lawyer, I get from prosecutors all the time. Hey, look, I got, you know, I got this evidence. It's got some fingerprints on it. I can't do anything with it until I get the hard copy. I can't take his phone call to an expert and have it examined. But you can know that you're going to need the time and ask for it. I'm sorry? I have a problem with this, with your argument. You may be absolutely right about what the practice is and what's reasonable. But we're talking about can we say that when the judge says I'm not going to give you a continuance because you waited until the day of trial to ask for it, you've known for two weeks that you were going to need one, and you didn't do it. Now, that may be contrary to the practice. It may be very unusual. But can we say it's a constitutional violation for the judge to say that? Can we say more than that? It's not only a constitutional violation, but it's an unreasonable application. It's more than clear error. It's so far out for the judge to say that, that the state court applied the Constitution and our prior Supreme Court's cases unreasonably. 1054-7 of the Penal Code requires prosecution to turn over evidence 30 days in advance. They had this evidence well in advance of December 2nd. So if we're going to hold Mr. Gann to ---- Wait a minute. I thought they told him about it pretty much when they knew about it. I'm sorry? They told him about it pretty much when they knew about it. No. What happened at the preliminary hearing, it was a Prop 15 prelim. Officer comes in. I presume the court knows what a Proposition 15 prelim is. Officer comes in and testifies. We found a knife in this guy's cell, period. End of discussion. He's held to answer, bound to Superior Court. That's it. Yeah, they found a knife in his cell. There's no argument about that. The question is, whose fingerprints were on that knife? Whose knife was it? How did it get there? What's the evidence to link that knife to this defendant? I understand that, but ---- I'm sorry. No, it's probably not our worth. I'm sorry? But it wasn't until December 22nd that the prosecution knew what the COJ had found. That's correct. All right. So they didn't know it on December 2nd. They knew it on December 22nd. Well, except that the prosecution is bound to know all that is in its possession. And I don't have the cite to that, but they are bound to know what their officers have. They're bound to know what DOJ has. They can't wait to develop that evidence until the day of trial and say, well, you know, gee, I'm really sorry, it seems to me. And if there are no further questions, I thank you for your time. Thank you, Judge. Case just argued will be submitted. The next case for argument is Peña-Torres v. Ashcroft. Good morning, Your Honor. Charles Nicolet here for the petitioner Aurelio Peña-Torres. This is a petition for review of a denial of evidence.
judges: Reinhardt, Paez, Berzon